UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SUEANN TURNWALD,**

       **Plaintiff,**             **CIVIL ACTION NO. 12-10007**

  vs.

                             **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 9) be denied, Defendant's motion for summary judgment (docket no. 12) be granted, and Plaintiff's complaint be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 22, 2009, and filed an application for supplemental security income on July 29, 2009, alleging disability beginning February 1, 2008. (TR 12, 123-31). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On October 14, 2010 Plaintiff appeared with counsel in Flint, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Joseph L. Brinkley, who presided over the hearing from Falls Church, Virginia. (TR 12, 29-56). Vocational Expert (VE) Timothy Shaner also appeared and testified at the hearing. In a February 18, 2011 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there were a significant number of jobs

1

existing in the national economy that Plaintiff could perform. (TR 12-20). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross motions for summary judgment which are currently before the Court.

### III.     PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.     Plaintiff's Testimony

Plaintiff was forty-four years old at the time of her alleged onset date of February 1, 2008. She completed the eleventh grade in high school but did not earn a high school diploma or obtain a GED. (TR 34). She lives in a mobile home with a friend. Plaintiff reports that she has a driver's license but does not drive much. (TR 33, 35).

Plaintiff testified that she was diagnosed with cancer and underwent chemotherapy and radiation treatment, which had the unwanted side effect of causing constant lower back pain. (TR 37). She testified that the radiation perforated her colon and caused her to have a colostomy. (TR 37). She testified that she suffers from depression and insomnia. Plaintiff testified that she has three to four bad days each week where she is not able to dress, bathe, or accomplish anything. (TR 38). She states that she takes a nap four to five days a week for several hours at a time. Plaintiff rates her pain at a constant level eight on a ten point scale without medication and at a level six and a half to seven with Methadone. (TR 39). She reports that her pain and insomnia cause her to have attention and concentration problems.

Plaintiff testified that she sits with her feet reclined to chest level for fourteen to sixteen hours each day and she has to constantly reposition herself. (TR 40-41, 45). In contrast, Plaintiff testified that she can only sit approximately two hours in an eight hour workday before she has to stand or lie down. (TR 42). She testified that she can walk up to one hour in an eight hour workday

but she is only able to walk a couple of feet without pain or discomfort. (TR 40, 42-44). Plaintiff testified that she can only stand a couple of minutes at a time because her feet start to tingle, burn, and become numb. (TR 40, 43). She states that she can lift or carry approximately five to ten pounds. (TR 40). Plaintiff testified that her back hurts when she bends, crawls, climbs, crouches, or kneels, although she states that she can push or pull with her upper extremities. (TR 40). She states that she has incontinence with her colostomy and she estimates that she uses the restroom up to twenty times per day. (TR 41). She testified that she shops for groceries and enjoys reading. (TR 45). Plaintiff reports that she gets along very well with her children, her grandchildren, and her roommate.

**B.     Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below. The medical record reveals that Plaintiff has a history of cervical cancer diagnosed at clinical stage IIB in or around February 2008 with no evidence of metastatic disease in the bone, abdomen, or pelvis. (TR 225-33, 248-49, 255, 268). The cervical cancer was treated with radiation by Dr. Ahmed Akl who determined that Plaintiff had a greater than sixty to seventy percent chance of cure. (TR 231-33). The cancer was also treated with chemotherapy. (TR 246, 447). In April 2008 Dr. Akl documented that the tumor showed significant response to radiation treatment. (TR 255).

In July 2009 Plaintiff suffered a bowel rupture caused by the radiation treatment. (TR 312). She was diagnosed with a perforated sigmoid colon and underwent a laparatomy, sigmoid cholectomy and colostomy at the St. Elizabeth Medical Center in Kentucky. (TR 283, 306). On July 23, 2009 Dr. Douglas Iddings, surgical oncologist, diagnosed Plaintiff with a common wound

3

infection following the surgical procedure and observed that Plaintiff had done well since her colostomy. (TR 306-07). In July 2009 examiners at the McLaren Regional Medical Center noted that Plaintiff changed her colostomy bag two to three times per day. (TR 312).

Plaintiff presented to Dr. Divya Thomas on August 11, 2009 for evaluation of chronic lower back pain, status post abdominal surgery for bowel perforation, depression, and a vitamin D deficiency status post chemotherapy and radiation therapy. (TR 333-34). Dr. Thomas noted that Plaintiff received chemotherapy and radiation for cervical cancer back in 2008 and her recent Pap smear came back normal. (TR 333). The doctor documented that Plaintiff reported a constant pain level of seven on a ten point scale. The doctor noted that despite her complaints of pain Plaintiff had no weakness of the extremities and no radiation of the pain. (TR 333). Dr. Thomas noted that Plaintiff refused to take vitamin D pills to treat her vitamin deficiency. (TR 334). Plaintiff was prescribed Zoloft for depression, Trazodone for insomnia, and Methadone for back pain. She estimated that she obtained a fifty percent reduction in back pain with Methadone. (TR 413).

Plaintiff was evaluated on August 18, 2009 by Dr. Rama Rao for pain management related to her back pain. (TR 356). Plaintiff described sharp, burning, throbbing, shooting pains with associated tingling and numbness. (TR 356). She rated her pain at a level six to ten on a ten point scale and reported that her pain increased with physical activity, standing and sitting. Dr. Rao noted that Plaintiff denied bowel or bladder incontinence. The doctor documented that Plaintiff's mental status was normal, her motor strength was good in the proximal and distal muscles of the bilateral upper and lower extremities, and she exhibited a normal range of motion of the hip joints. (TR 356-57). The doctor further noted that Plaintiff showed decreased lumbar spine flexion and extension. Dr. Rao assessed Plaintiff with chronic back pain with radicular pain and lumbar degenerative

disease, and noted among other things that Plaintiff may benefit from physical therapy and bilateral sacroiliac joint injections. In November 2009 Dr. Rizwan Danish found that Plaintiff had mild neuropathy possibly as a result of her chemotherapy. (TR 423). The record shows that Plaintiff did not try physical therapy or have any back surgery to treat her back pain. (TR 461).

In October 2009 Plaintiff returned to Dr. Iddings to consider a colostomy reversal. (TR 364-65). Dr. Iddings noted that Plaintiff's abdominal wound was ninety percent healed with only a small defect remaining and she showed no evidence of local, regional or distant cancer disease. Dr. Iddings opined that Plaintiff had not been able to work during her cancer treatment and she would be unable to return to gainful employment for another three to four months. A second progress note dated October 2009 shows that Plaintiff's incision healed well and her ostomy looked good. Dr. Iddings opined that Plaintiff's side effect of fatigue should get better and she should experience a full recovery. The doctor documented that Plaintiff's symptoms were not permanent and she should not require long term disability. (TR 366-67).

Dr. Ashok Kaul completed a psychiatric review technique on October 31, 2009. (TR 384). Dr. Kaul assessed Plaintiff for depression and a history of anxiety under listings 12.04 and 12.06. The doctor determined that Plaintiff failed to satisfy any of the Part B criteria for either listing. Specifically, the doctor concluded that Plaintiff had no more than mild restrictions in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, with no episodes of decompensation. (TR 394). The doctor also concluded that the evidence did not establish the presence of the "C" criteria. Dr. Kaul noted that there was no evidence of current psychological treatment, Plaintiff was independent in her activities of daily living such as shopping,

5

taking medications, cooking, light house chores, she had adequate socialization, and she was able to manage money. (TR 396). Dr. Kaul concluded that Plaintiff's mental status was nonsevere.

Crystal Danner completed a physical residual functional capacity assessment on November 2, 2009. (TR 398-405). Ms. Danner determined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand, walk, and sit six hours in an eight hour workday; with unlimited push/pull abilities. She found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and never climb ladders, ropes, and scaffolds. (TR 400). Ms. Danner concluded that Plaintiff had no manipulative, visual, or communicative limitations. She found that Plaintiff should avoid environmental hazards like machinery and heights, but otherwise found no environmental limitations. Ms. Danner concluded that Plaintiff's statements of limitations were partially credible since the evidence showed that she had tenderness over facet and sacroiliac joints, but also showed that she had a normal gait and no need for an assistive device for ambulation.

On February 18, 2010 Plaintiff underwent a psychiatric evaluation and biopsychosocial assessment from the Taylor Psychological Clinic. (TR 455-58). Plaintiff complained of anxiety, crying spells, mood swings, poor focus, irritability, and insomnia. She reported that she had no previous psychiatric treatment. The examiner documented that Plaintiff was depressed but otherwise cooperative, alert, oriented, with a normal memory, a knowledge base consistent with her education, a normal perception, and good insight and judgment. The examiner observed that Plaintiff had a normal gait and an unremarkable posture.

On March 16, 2010 Plaintiff reported to the Great Lakes Spine Center where she was evaluated by Dr. Kavitha Reddy. (TR 461-62). Dr. Reddy noted that Plaintiff complained of

6

bilateral pain in her lower lumbosacral region. The doctor reported that Plaintiff denied difficulty with bladder or bowel incontinence. (TR 461). Dr. Reddy noted that Plaintiff's gait was normal, she was able to ambulate without an assistive device, she was able to walk on toes and heels, and she was independent with most of her activities of daily living. The doctor also noted that Plaintiff had limited lumbar range of motion with full hip range of motion, and diffuse tenderness on palpation of the lower lumbar spine. The doctor observed that Plaintiff was alert, oriented, a good historian, with no apparent cognitive deficits, and appropriate mood and affect.

## IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant employment consisted of work as a driver at the light exertional level, as an assembler for a shower and bath manufacturer listed as light exertional work although performed at a medium exertional level, and as an automobile parts assembler performed at a medium exertional level. (TR 50). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who requires light work with the following limitations: (a) occasional lifting and carrying of up to twenty pounds; (b) frequent lifting and carrying of ten pounds; (c) no pulling or pushing limitations; (d) ability to stand and or walk up to six hours in an eight hour workday; (e) ability to sit for a total of two hours out of an eight hour workday; (f) limited to occasional climbing stairs, ramps, balancing, stooping, and kneeling; (g) never crouch, crawl, or climb ladders, ropes, or scaffolds; and (h) must avoid hazards in the workplace, including dangerous machinery and unprotected heights. (TR 50-51). The VE testified that the hypothetical individual could not perform Plaintiff's past work, but could perform light, unskilled work as a housekeeper, cashier, or assembler, comprising 46,200 jobs in the lower peninsula of Michigan. (TR 51).

The ALJ next asked the VE whether jobs existed for the hypothetical claimant who required sedentary work in which she could only sit for up to two minutes at a time for a total of two hours out of an eight hour workday with her feet elevated at least to chest level, stand for two minutes or less at a time, walk up to five minutes at a time and up to one hour in an eight hour workday, lift and/or carry up to ten pounds both occasionally and frequently, occasionally bend and stoop, be permitted to be off-task for up to fifteen to twenty times in an eight hour workday for bathroom breaks and up to four hours because of sleep related requirements. (TR 52). The VE testified that these limitations would be work preclusive.

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since her alleged onset date of February 1, 2008, and suffers from the severe impairments of cervical cancer and degenerative disc disease, she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 14-16).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a limited range of light work, provided she is limited to occasional climbing of stairs/ramps, balancing, stooping, and kneeling; no crouching, crawling, or climbing of ladders/ropes/scaffolds; avoidance of hazards that include dangerous machinery and unprotected heights; and the work environment must afford her the standard fifteen minute morning and afternoon breaks with thirty minutes allotted for a lunch time break. (TR 16-18). The ALJ concluded that because Plaintiff is not capable of performing her past relevant work, but could perform jobs that exist in significant numbers in the national economy, Plaintiff is not under a disability as defined in the Social Security Act. (TR 22-24).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ failed to discuss and analyze the objective medical evidence, improperly evaluated the opinions of treating source Dr. Iddings, failed to consider whether he should contact the treating source for clarification, failed to evaluate whether Plaintiff was capable of a competitive work schedule, and crafted an RFC assessment that did not accurately portray Plaintiff's physical and mental impairments and nonexertional limitations.  Plaintiff also claims that the ALJ rejected her testimony as to her pain symptoms without proper analysis.

*1.     Evaluation of the Medical Evidence and Treating Physician Opinions*

It is well-settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other

substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

Plaintiff argues that the ALJ misstated the facts when he stated that "the file does not indicate that Plaintiff was put on any physical limitations at any time." (TR 17). In making her argument Plaintiff directs the Court's attention to the medical examination report completed by Dr. Iddings in August of 2009. In the report, Dr. Iddings documented that Plaintiff had a non-healing incision following her colostomy surgery and she was limited to lifting less than ten pounds occasionally, never lifting more than ten pounds, and limited to standing and walking less than two hours in an eight hour workday. (TR 373-75). Plaintiff claims that the ALJ failed to discuss this report. Instead, she claims that the ALJ discussed another part of Dr. Iddings' medical records, cherry picked evidence from those records, and conveniently rejected Dr. Iddings' medical opinions.

As Plaintiff contends, the ALJ stated in his opinion that "[t]he file does not indicate that the claimant was put on any physical limitations at any time." (TR 17). The ALJ made this statement during his analysis of Plaintiff's claims of low back pain. In the same paragraph the ALJ made the observation that Plaintiff's gait and hip range of motion were normal. He also noted that Dr. Rao, Plaintiff's pain specialist, documented that Plaintiff had not been put on any physical restrictions.

11

After analyzing the evidence related to Plaintiff's back condition, the ALJ continued his assessment by analyzing evidence pertaining to her cervical cancer. The ALJ found that Plaintiff suffered from secondary impairments caused by the cancer and noted that Plaintiff had undergone a colostomy. The ALJ determined that it was possible that Plaintiff could not work from February 2008 through April 2008 during her radiation treatment. He went on to conclude, however, that there was no objective medical evidence to show how Plaintiff's cervical cancer and subsequent complications would keep her from working for a period of at least twelve months.

In his analysis of the evidence pertaining to cervical cancer, the ALJ cited to Dr. Iddings' records contained in exhibit 10F. In doing so, the ALJ did not specifically address Dr. Iddings' August 2009 medical report that concluded that Plaintiff was limited in her ability to stand, walk, and lift. Rather, the ALJ cited other reports of Dr. Iddings contained in the exhibit. As previously discussed, Dr. Iddings authored two progress notes dated October 2009. In one progress note he opined that Plaintiff had not been able to work during her cancer treatment and she would be unable to return to gainful employment for three to four months. In the second progress note he documented that Plaintiff's incision healed great, her ostomy looked good, her side effects would get better, and she should experience a full recovery with no need for long term disability. The ALJ compared the doctor's statements and concluded that he could not give the opinions significant weight because they conflicted.

The record shows that Dr. Iddings made his August 2009 assessment limiting Plaintiff in her ability to stand, walk, and lift one month after Plaintiff's colostomy and while she was undergoing treatment to resolve an infection of her surgical site. The report states that Plaintiff was experiencing tenderness and infection in her abdominal area. Although Dr. Iddings limited Plaintiff

12

with regard to her abilities to stand, walk, and lift, he documented that Plaintiff's condition was improving and her limitations were not expected to last more than ninety days. As noted above, Dr. Iddings would later opine that Plaintiff would not require any long term disability. He would also find that Plaintiff's wounds were ninety percent healed in less than six months and there was no evidence of cancer after October 2009.

The undersigned finds that the ALJ properly considered the medical evidence and gave good reasons for discounting the opinions of Dr. Iddings. The ALJ did not err in failing to address the short term limitations imposed in the August 2009 opinion.

As for Plaintiff's claims that the ALJ should have considered recontacting Dr. Iddings for clarification, the undersigned disagrees. Social Security Ruling 96-5p states that the Commissioner must make every reasonable effort to recontact treating sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear. SSR 96-5p, 1996 WL 374183, at *6. The Sixth Circuit has found that this duty is triggered only when the information received by the ALJ is inadequate and does not permit the ALJ to reach a determination on the claimant's disability status. *Poe v. Comm'r*, 342 Fed. Appx. 149, 157 n.3 (6th Cir. 2009); *Ferguson v. Comm'r*, 628 F.3d 269, 273 (6th Cir. 2010) (stating that the duty to recontact under SSR 96-5p is triggered when "the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record."). Here, the information provided by Dr. Iddings was not so inadequate as to prevent the ALJ from reaching a disability determination. Thus, the ALJ's duty to recontact Dr. Iddings was not triggered.

*2.     Plaintiff's Credibility*

Plaintiff argues that the ALJ rejected her pain symptoms without any adequate rationale and

failed to consider such factors as medication side effects, daily activities, and pain symptoms in his decision. It is well established that an ALJ's credibility determinations should be accorded deference and should not be easily discarded since the ALJ has been afforded the unique opportunity to observe the demeanor of the claimant. *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234 (6th Cir. 1993) (citation omitted). A finding that a claimant is not credible must be supported by substantial evidence in the same manner as any other ultimate factual determination.

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483, 34485-86 (1996). The assessment must be based on a consideration of all of the evidence in the case record, including

> Statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. at 34486.

The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have

14

on your ability to work ... solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to the available objective medical evidence, when assessing Plaintiff's statements of pain the ALJ should consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). While the ALJ should consider the factors listed above, "he is not required to significantly analyze any of them." *Ahee v. Comm'r*, No. 07-12071, 2008 WL 4377652, at *3 (E.D. Mich. Sept. 22, 2008) (citation omitted).

Here, the ALJ reviewed the medical evidence and concluded that Plaintiff's limiting statements were not credible to the extent they were inconsistent with the RFC. The RFC, however, took into account various limitations, such as finding that Plaintiff was limited to light work with only occasional climbing of stairs/ramps, balancing, stooping, and kneeling, with no crouching, crawling, or climbing of ladders/ropes/scaffolds. The ALJ does not specifically address Plaintiff's activities of daily living or medication side effects in his opinion. However, the record shows that Plaintiff was independent in most of her activities of daily living and there is no indication that she complained of side effects from medications. Indeed, Plaintiff does not point to evidence to show that she suffered medication side effects.

Here, the ALJ did not simply offer a single, conclusory statement dismissing Plaintiff's limiting statements. Instead, the ALJ considered Plaintiff's testimony regarding fatigue, depression,

15

lack of interest in leaving her home, and her concentration difficulties in light of the other evidence of record. The ALJ concluded that Plaintiff has mild limitations in the area of concentration, persistence or pace and social functioning. The ALJ addressed Plaintiff's claims of physical pain and observed that she only received conservative treatment for her back pain, she had a normal gait, and a full range of motion of the hips. The ALJ addressed Plaintiff's claims related to her cancer and found that she was ninety percent healed six months after her colostomy with no indication that long term disability would be necessary. Having reviewed the record the undersigned finds that the ALJ's assessment of Plaintiff's credibility was not improper. The credibility assessment is supported by substantial evidence and is entitled to deference.

3. *The RFC Determination and SSR 96-8p*

Plaintiff contends that the ALJ crafted an RFC assessment that did not accurately portray her physical and mental impairments and nonexertional limitations, and failed to comply with SSR 96-8p's requirement that he consider Plaintiff's ability to perform competitive work activities on a regular and continuing basis. Specifically, Plaintiff argues that there is no evidence to suggest that Plaintiff is capable of performing light exertional level work. She claims that the RFC does not account for Plaintiff's problems including fatigue, anxiety, and her need to lie down due to her severe impairment.

The ALJ discussed Plaintiff's testimony with regard to her exertional and nonexertional limitations. The ALJ noted that Plaintiff testified that she cannot work in part due to depression, but found that the evidence did not substantiate Plaintiff's claims that she sees a psychiatrist twice a week. The ALJ concluded that the depression does not cause more than minimal limitations. He addressed Plaintiff's testimony that she does not leave the house, contrasted that with evidence that

shows that she gets along well with family and friends, and concluded that Plaintiff has only mild limitations in social functioning. The ALJ addressed Plaintiff's claims of fatigue and her testimony that she has difficulty concentrating and concluded that she had mild limitations in the area of concentration, persistence or pace.

Next, the ALJ considered Plaintiff's physical limitations and noted that there was no evidence to show that her back disorder affected her ability to ambulate effectively. He addressed Plaintiff's claims of low back pain and concluded that the record showed that Plaintiff tested positive bilaterally with the Patrick's test but had a normal gait. While he acknowledged that Plaintiff complained of radiating pain to both hips, he also found that Plaintiff had a full range of motion of the hips on physical examination. The ALJ observed that Plaintiff's back pain was treated conservatively with injections. He also noted that Plaintiff's pain specialist observed that Plaintiff had not been put on any physical restrictions.

With regard to the cancer, the ALJ considered the evidence and found that there was no evidence of cancer as of October 2009. He also observed that the evidence did not demonstrate that Plaintiff's carcinoma metastasized or was persistent or recurrent following initial therapy. The ALJ found that the evidence showed that Plaintiff's wounds were ninety percent healed and there was no evidence to show how her cervical cancer and complications could keep her from working.

The ALJ considered the evidence of record and crafted an RFC that accurately portrays Plaintiff's credible limitations. Since substantial evidence supports the ALJ's RFC, the RFC should not be disturbed.

Finally, without developing her argument, Plaintiff states that the ALJ never evaluated whether she was capable of a competitive work schedule. The record belies that argument. The ALJ

developed a function by function assessment of Plaintiff's specific limitations and incorporated those into the RFC. Then, during the hearing the ALJ presented appropriate hypothetical questions to the VE and specifically asked the VE whether an individual with Plaintiff's specific limitations would be able to perform work on a regular sustained and competitive basis. (TR 51). The VE testified that competitive work would be available for an individual with the identified limitations. The undersigned concludes that the ALJ complied with the requirements of SSR 96-8p.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and

labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: February 14, 2013          s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE



## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: February 14, 2013               s/ Lisa C. Bartlett
                                       Case Manager